## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**PATRICIA ANN GARCIA,**

      **Plaintiff,**

    **vs.**                                                    **Civ. No. 21-51 JFR**

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security Administration,**

      **Defendant.**

## <u>MEMORANDUM OPINION AND ORDER</u>[1]

    **THIS MATTER** is before the Court on the Social Security Administrative Record (Doc. 15)[2] filed August 4, 2021, in connection with Plaintiff Patricia Ann Garcia's *Motion to Reverse and Remand for Rehearing with Supporting Memorandum* ("Motion"), filed December 2, 2021. Doc. 22. The Social Security Commissioner filed a response in opposition on March 7, 2022. Doc. 26. Plaintiff filed a reply on March 25, 2022. Doc. 29. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g), 1383(c). Having meticulously reviewed the entire record and the applicable law, and being otherwise fully advised in the premises, the Court finds that Plaintiff's Motion is not well taken. Therefore, it is **DENIED**, and the Commissioner's decision is **AFFIRMED**.

## I. BACKGROUND

    Plaintiff completed high school in 1983. Tr. 229. In 2013, she completed vocational training to be an ophthalmology medical assistant/technologist. Tr. 229. Plaintiff ceased

---

[1] Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b), the parties consented to the undersigned to conduct any or all proceedings, and to enter an order of judgment in this case. Docs. 4, 7.

[2] Hereinafter, the Court's citations to the Social Security Administrative Record (Doc. 15), which is before the Court as a transcript of the administrative proceedings, are designated as "Tr."

working in 2014.  Tr. 197, 229.  Before that time, she held jobs as an office manager, an ophthalmologist technologist, and an optician technologist and receptionist.  Tr. 230.  Plaintiff alleges that she became disabled on August 14, 2018, at the age of fifty-three years and seven months, due to anxiety, depression, fibromyalgia, insomnia, osteoarthritis, and plantar fasciitis.  Tr. 95-96.  Plaintiff applied for Social Security Disability Insurance Benefits ("DIB"), pursuant to Title II of the Social Security Act ("the Act"), 42 U.S.C. § 401 *et seq.*, on November 27, 2018.  Tr. 194.

Plaintiff's application was denied on March 8, 2019.  Tr. 134.  It was again denied at reconsideration on July 2, 2019.  Tr. 139.  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held telephonically before ALJ Stephen Gontis on May 20, 2020.[3]  Tr. 145, 15, 25.  Plaintiff was represented by attorney Aida Medina Adams at the hearing.[4]  Tr. 15.  The ALJ received testimony from Plaintiff and a Vocational Expert ("VE").  Tr. 34, 54.  On June 19, 2020, the ALJ issued an unfavorable decision.  Tr. 12.  The Appeals Council denied Plaintiff's request for review on November 24, 2020, which made the ALJ's unfavorable decision the final decision of the Commissioner in this case.  Tr. 1.  On January 21, 2021, Plaintiff timely filed a Complaint before the Court seeking judicial review of the Commissioner's final decision.  Doc. 1.

## II. APPLICABLE LAW

### A.    Disability Determination Process

An individual is considered disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

---

[3] The hearing was held telephonically due to the COVID-19 pandemic.  Tr. 15.

[4] In the instant proceedings, Plaintiff is represented by attorney Amber L. Dengler.  Doc. 1.

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To determine whether a person satisfies this statutory criteria, the Commissioner has adopted the familiar five-step sequential analysis as follows:

(1) At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."  If the claimant is engaged in substantial gainful activity, she is not disabled regardless of her medical condition.

(2) At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s).  If the claimant does not have impairment(s) or a combination of impairments that is severe and meets the duration requirement, she is not disabled.

(3) At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement.  If so, a claimant is presumed disabled.

(4) If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform her "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996).  First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [the claimant] can still do despite [her physical and mental] limitations."  20 CFR § 404.1545(a)(1).  This is called the claimant's residual functional capacity ("RFC").  *Id.* § 404.1545(a)(3).  Second, the ALJ determines the physical and mental demands of a claimant's past work.  Third, the ALJ determines whether, given the claimant's RFC, the claimant is capable of meeting those demands.  A claimant who is capable of returning to past relevant work is not disabled.

(5) If the claimant does not have the RFC to perform her past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience.  If the Commissioner is unable to make that showing, the claimant is deemed disabled.  If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

"Substantial work activity is work activity that involves doing significant physical or mental activities," even when it is performed less often, for less money, or with less responsibility, than

in the past.  20 C.F.R. § 404.1572(a).  "Gainful work activity is work activity" done "for pay or

profit. . . . [I]t is the kind of work usually done for pay or profit, whether or not a profit is

realized."  20 C.F.R. § 404.1572(b).  The claimant has the initial burden of establishing a

disability in the first four steps of this analysis.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).

The burden shifts to the Commissioner at step five to show that the claimant is capable of

performing work in the national economy.  *Id.*  A finding that the claimant is disabled or not

disabled at any point in the five-step review is conclusive and terminates the analysis.  *Casias v.

Sec'y of Health & Hum. Serv.*, 933 F.2d 799, 801 (10th Cir. 1991).

**B.**    **Standard of Review**

The Court reviews the Commissioner's decision to determine whether the factual

findings are supported by substantial evidence in the record and whether the correct legal

standards were applied.  42 U.S.C. § 405(g); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir.

2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004).  "Substantial evidence is such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Hamlin*, 365 F.3d at 1214 (internal quotation marks and citation omitted).  "A decision is not

based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a

mere scintilla of evidence supporting it."  *Langley*, 373 F.3d at 1118 (internal quotation marks

and citation omitted).  Likewise, "[e]vidence is not substantial if it . . . constitutes mere

conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

"The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is

not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th

Cir. 1996).  The reasons underlying the ALJ's decision must be "articulated with sufficient

particularity to allow for judicial review."  *Gorian v. Colvin*, 180 F. Supp. 3d 863, 868 (D.N.M.

4

2016).  Further, the ALJ's decision must "apply the correct legal standard" and supply "a sufficient basis to determine that appropriate legal standards have been followed." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (internal quotation marks and citation omitted). The Court does not "reweigh the evidence" or impose its judgment in place of the Commissioner's.  *Hamlin*, 365 F.3d at 1214 (internal quotation marks and citation omitted).

### III. ANALYSIS

The ALJ made his decision that Plaintiff was not disabled at step four of the five-step sequential evaluation. Tr. 22-23.  The ALJ determined that Plaintiff had not engaged in substantial gainful activity from her alleged onset date, August 14, 2018, through the date that she last met the Act's insurance status requirements, December 31, 2019. Tr. 17.  He found that Plaintiff had the following severe impairments: cervical and lumbar spine degenerative disc disease, fibromyalgia, osteoarthritis in the hands, knees, and feet, and plantar fasciitis.  Tr. 17. However, the ALJ found that none of Plaintiff's severe impairments met or exceeded in severity the listings described in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *See* Tr. 17-19.  Accordingly, he proceeded to step four of the sequential evaluation and determined that Plaintiff had the RFC

> to perform sedentary work as defined in 20 C[.]F[.]R[. §] 404.1567(a) except lifting 10 pounds occasionally and less than 10 pounds frequently; standing or walking for 2 hours in an 8-hour workday; sitting for 6 hours; frequently reaching overhead bilaterally; frequently handling and fingering bilaterally; occasionally climbing ramps and stairs; never climbing ladders, ropes, or scaffolds; and occasionally balancing, stooping, kneeling, crouching, and crawling.

Tr. 19-20.  The ALJ determined that Plaintiff "was capable of performing past relevant work as an Optometric Assistant" because "[t]his work did not require the performance of work-related activities precluded by [Plaintiff]'s [RFC]."  Tr. 22-23.  Thus, he concluded that Plaintiff was not disabled under the Act. Tr. 24-25.  The ALJ also proceeded to step five of the sequential evaluation, and found that "there were other jobs that existed in significant numbers in the

national economy that [Plaintiff] also could have performed," again rendering her not disabled under the Act.  Tr. 23-25.

As the basis of her Motion, Plaintiff advances claims of error on the part of the ALJ at steps two, three, four, and five of the sequential evaluation.  Doc. 22 at 1-2, 9, 12.  Specifically, Plaintiff contends that, at step two, the ALJ did not consider limitations from each of her impairments.  Doc. 22 at 12.  As to step three, Plaintiff argues that the ALJ did not properly assess her fibromyalgia and the limitations that flowed therefrom.  Doc. 22 at 10.  With respect to step four, Plaintiff maintains that the ALJ's RFC assessment was not supported by substantial evidence, which resulted in a "tainted" past work analysis, and that "the ALJ failed to fully analyze whether [she] can perform the functions the assessed job requires."  Doc. 22 at 1-2.  Finally, Plaintiff asserts that, at step five, the ALJ did not "incorporate all limitations into the hypothetical questions" posed to the VE, resulting in a faulty analysis that runs "contrary to evidence and to law."  Doc. 22 at 2.  The Commissioner offers a challenge to Plaintiff's position in every particular, advancing an overarching argument that Plaintiff invites the Court to reweigh the evidence before the ALJ, contrary to the demands of the substantial evidence standard of review.  Doc. 26 at 2.

Before engaging with the finer points that assemble Plaintiff's arguments, the Court first sets out the general legal standards that govern the larger issues at hand.  For purpose of convenience in the analysis that follows, the Court groups Plaintiff's arguments first into those that bear on the weight the ALJ assigned to Plaintiff's subjective complaints of pain and related symptoms according to his assessment of her credibility.  The Court proceeds to analyze the ALJ's treatment of her medically determinable mental impairments, and concludes by addressing

her contentions related to the ALJ's determination of her RFC and her ability to return to past relevant work.

**A.     Legal Standards**

*1.     Subjective Complaints of Pain and Related Symptoms*

"A claimant's subjective allegation of pain is not sufficient in itself to establish disability." *Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993). "Before the ALJ need even consider any subjective evidence of pain, the claimant must first prove by objective medical evidence the existence of a pain-producing impairment . . . that could reasonably be expected to produce the alleged disabling pain." *Id.* (internal citations omitted). If this is accomplished, "the ALJ must then consider whether there is a loose nexus between the proven impairment and the subjective complaints of pain." *Padilla v. Berryhill*, No. 16-CV-106, 2017 WL 3412089, at *6 (D.N.M. Mar. 28, 2017) (internal quotation marks and citation omitted). "If there is a loose nexus, the ALJ considers all of the evidence, both objective and subjective, to determine whether the pain is disabling." *Id.*

*2.     Medical Opinion Evidence*

The ALJ evaluates the persuasiveness of medical opinions based on: (1) the degree to which the opinion is supported by objective medical evidence and supporting explanation; (2) how consistent the opinion is with other evidence in the record; (3) the source's treating relationship with the claimant (i.e., how long/frequently the source treated the claimant and for what purpose); (4) whether the source was specialized on the impairment on which he/she is opining; and (5) any other factor tending to support or contradict the opinion. 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). "The most important factors . . . are supportability . . . and consistency." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). An ALJ "will not defer or give

any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)."  20 C.F.R. §§ 404.1520c(a), 416.920c(a).

In considering the persuasiveness of medical opinions, the ALJ "must discuss the weight he assigns."  *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012).  The ALJ need not discuss each factor articulated in the regulations; rather, the ALJ must merely explain his weighing decision with sufficient specificity so as to be capable of review.  *See Langley*, 373 F.3d at 1119.  Put differently, if the ALJ rejects an opinion, he "must then give 'specific, legitimate, reasons for doing so.'"  *Id.* (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)).

      *3.*    *RFC Assessment*

A claimant's "RFC is an administrative finding of what an individual can do despite his or her limitations."  *Spicer v. Barnhart*, 64 F. App'x 173, 175 (10th Cir. 2003).   The "ALJ's RFC must be based on the entire case record, including the objective medical findings and credibility of the claimant's subjective complaints."  *Poppa v. Astrue*, 569 F.3d 1167, 1170-71 (10th Cir. 2009).  In assessing a claimant's RFC, "the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, whether severe or not severe."  *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013) (emphasis omitted); *see also* 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).  This assessment must be "based on all of the relevant and other evidence" in the record. C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).  "If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted."  *Sullivan v. Colvin*, 519 F. App'x 985, 988 (10th Cir. 2013) (alterations omitted) (quoting Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7 (July 2, 1996)).

Further, "the ALJ's 'RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and nonmedical evidence." *Wells*, 727 F.3d at 1065 (omission and internal quotation marks omitted) (quoting SSR 96-8p, 1996 WL 374184, at *7).  When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion with citations to specific medical facts and nonmedical evidence, the Court will conclude that his RFC assessment is not supported by substantial evidence.  *See Southard v. Barnhart*, 72 F. App'x 781, 784-85 (10th Cir. 2003).  The ALJ's decision must be sufficiently articulated so that it is capable of meaningful review.  *Spicer*, 64 F. App'x at 177-78.

## B.    The Weight Assigned to Plaintiff's Credibility

Many of Plaintiff's claims, particularly those premised on alleged error at steps three and four of the sequential evaluation, are rooted in the weight given to her subjective complaints of pain and related symptoms by the ALJ, and Plaintiff specifically raises the ALJ's assessment of her "[s]ubjective [s]ymptoms of [p]ain and [l]imitations" as a basis of such error.  Doc. 22 at 4-12, 16-20.  For this reason, the Court conducts an analysis here of the ALJ's credibility assessment of Plaintiff, setting out Plaintiff's specific complaints of pain and related symptoms, the law that applies once the standard for reviewing subjective complaints of pain and related symptoms is satisfied, and the reasoning provided by the ALJ for the weight given to those complaints.

Generally, Plaintiff's complaints of pain and related symptoms stem from degenerative disc disease, fibromyalgia, osteoarthritis, and plantar fasciitis.  Doc. 26 at 7-12.  The record contains objective evidence of Plaintiff's diagnoses for each one these impairments, and the ALJ found each of them to be a severe impairment.  Tr. 17; *see, e.g.*, Tr. 360, 506.  Thus, objective

medical evidence in the record allowed Plaintiff to prove the presence of pain-producing impairments.  *See Thompson*, 987 F.2d at 1488.  As noted above, because Plaintiff satisfied this requirement, it was incumbent upon the ALJ to determine whether there was a "loose nexus" between those impairments and her "subjective complaints of pain," and then decide whether her subjective complaints of disabling pain and related symptoms were credible.  *Id.* at 1488-89 (internal quotation marks and citation omitted).

A determination of a claimant's credibility falls squarely in the factfinder's province and must remain undisturbed if supported by substantial evidence.  *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010).  But, "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."  *Id.* (alteration, internal quotation marks, and citation omitted); *see also* SSR 16-3p, 2017 WL 5180304, at *10-11 (Oct. 25, 2017) (discussing how, in the five-step sequential evaluation, an ALJ must evaluate a claimant's reported symptoms).  In assessing credibility, the ALJ considers:

> 1. Daily activities;
>
> 2. The location, duration, frequency, and intensity of pain or other symptoms;
>
> 3. Factors that precipitate and aggravate the symptoms;
>
> 4. The type, dosage, effectiveness, and side effects of any medication a[ claimant] takes or has taken to alleviate pain or other symptoms;
>
> 5. Treatment, other than medication a[ claimant] takes or has taken to alleviate pain or other symptoms;
>
> 6. Any measures other than treatment a[ claimant] uses or has used to relieve pain or other symptoms . . . ; and
>
> 7. Any other factors concerning a[ claimant]'s functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p, 2017 WL 5180304, at *7-8.  Further, in determining the credibility of pain testimony, the ALJ ordinarily considers

> [t]he levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Thompson*, 987 F.2d at 1489 (internal quotation marks and citations omitted). "Tenth Circuit precedent does not require a formalistic factor-by-factor recitation of the evidence, so long as the ALJ sets forth specific evidence he relies on in evaluating the claimant's credibility." *Padilla*, 2017 WL 3412089, at *7 (omission, alteration, internal quotation marks, and citation omitted); *see also Thompson*, 987 F.2d at 1490 ("There is not a talismanic requirement that each factor . . . be addressed.").

The ALJ satisfied this standard here. In reaching a determination on Plaintiff's credibility, he thoroughly summarized Plaintiff's testimony from the hearing regarding her pain and related symptoms, and stated:

> After careful consideration of the evidence, the [ALJ] finds that . . . [Plaintiff]'s medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, . . . [Plaintiff]'s statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record.

Tr. 20. Specifically, in his application of SSR 16-3p, the ALJ noted that Plaintiff complained of "fatigue and 'fibro fog' that caused her to think slowly," "pain from her feet to her shoulders, back spasms, and problems extending her arms," and "hand swelling and stiffness." Tr. 20 (quoting Tr. 37). The ALJ further outlined Plaintiff's hearing testimony that "her medication [w]as 'horrible' because it prevented her ability to function, but . . . helped with her pain," "her doctors were not doing much to try to help her, and she was only told to try to move as much as she could," physical therapy made things worse, on "'bad days' . . . she was unable to function or move," and "[o]n good days, which occurred two to three days per week, she . . . perform[ed]

11

household chores and personal care."  Tr. 20 (quoting Tr. 43, 45).  Finally, the ALJ considered

that Plaintiff "denied mental health treatment," "testified that she could sit only 10 minutes

before needing to move around, stand up to 15 minutes before needing to change positions, and

walk 15 minutes before needing to change positions," and described "dropping things such as a

cup or a glass, and . . . lift[ing] only 5 pounds."  Tr. 20.

      The ALJ then outlined Plaintiff's medical records, which indicated that in late 2018,

Plaintiff "reported her medications were adequately managing her pain with no side effects."  Tr.

21 (citing Tr. 346).  Her medical records from this time period further showed that Plaintiff's

"left foot pain resolved after one injection, and her right foot pain resolved after [two]

injections," and while she ceased taking certain medications "due to side effects, she found a

weighted blanket beneficial" and had prescriptions for different medications.  Tr. 21 (citing Tr.

348).  Finally, during this time, Plaintiff had an examination that showed full strength to upper

and lower extremities, and while she had a "slow and waddling" gait, one month later, her gait

had normalized.  Tr. 21 (citing Tr. 350, 363).

      The ALJ further outlined Plaintiff's medical records from 2019.  Tr. 21-22.  These

records contained Plaintiff's complaints of pain, fatigue, and related symptoms, but indicated

"that her plantar fasciitis resolved due to steroid injections," that she exhibited a "good range of

motion in the upper extremities and spine," and that she was advised to continue taking a

medication for her fibromyalgia.  Tr. 21 (citing Tr. 456-62).  Later that year, Plaintiff received an

examination that showed "good range of motion" in her upper extremities and spine, no crepitus

in her upper extremities, and no tenderness in her spine.  Tr. 21 (citing Tr. 639).  A subsequent

examination revealed no changes, and "showed no swan neck, boutonnieres deformities, . . .

ulnar deviation of the [metacarpophalangeal joint]s . . . nodules, or tophi."  Tr. 21 (citing Tr.

752).  Plaintiff was prescribed another medication to manage pain and fatigue.  Tr. 21 (citing Tr.

756).  She also reported that physical therapy exercises helped relieve pain in her lower back.

Tr. 21 (citing Tr. 749).  Finally, by the end of 2019, after complaining of "back spasms that did

not improve with physical therapy," Plaintiff had another examination during which "[s]he

denied worsening back pain" and reported positive results from one of her medications, while

another made her dizzy.  Tr. 21 (citing 813, 883).  By early 2020, Plaintiff reported that another

one of her medications was "'highly effective' on her most severe pain days."  Tr. 21 (quoting

Tr. 921).

        Taken together, the relevant discussion contained in the ALJ's decision demonstrate that

he adequately considered the factors applicable to credibility determinations relative to

Plaintiff's subjective complaints of pain and related symptoms, and afforded proper weight

thereto, based on his finding that these complaints were "not entirely consistent with the medical

evidence and other evidence in the record."  Tr. 20.  The Court is therefore satisfied that the

ALJ's credibility determination is supported by substantial evidence.  Accordingly, the Court

concludes that there is no error with respect to the ALJ's assessment of Plaintiff's subjective

complaints of pain and related symptoms.

### C.    Plaintiff's Medically Determinable Mental Impairments

        Plaintiff's position with respect to the ALJ's findings at step two of the sequential

evaluation is that he did not consider her limitations resulting from anxiety and depression.  Doc.

22 at 12-13.  Specifically, according to Plaintiff, the ALJ erred first by assessing anxiety and

depression as non-severe impairments from which she suffered, when in fact they were severe,

and second by failing to consider her limitations resulting from these impairments, even if they

were non-severe.  Doc. 22 at 12-13.  Plaintiff contends that this error stems from the ALJ

improperly disregarding the opinion of Dr. John P. Owen, who conducted a mental status

13

examination on her.  Doc. 22 at 14; Tr. 448.  Conversely, the Commissioner argues that the ALJ

properly considered the opinion of Dr. Owen, and that regardless of this consideration, Plaintiff

has failed to actually mount a challenge to the ALJ's treatment of this opinion evidence, instead

relying "largely on her own statements about her symptoms," all the while asking the Court to

reweigh the evidence.  Doc. 26 at 13-14.  At the outset, the Court notes that there can be no

reversible error at step two of the five-step sequential analysis provided that the ALJ finds a

single severe impairment, as such a finding disallows a denial of benefits at that step and requires

the ALJ to continue the analysis.  *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016).

Therefore, the Court centers its analysis below on Plaintiff's mental impairments only insofar as

they relate to her argument that the ALJ's findings in this respect tainted his determination of her

RFC.  *See* Doc. 12-14.

      In discussing Plaintiff's medically determinable mental impairments, the ALJ stated that

they "did not cause more than minimal limitation in . . . [Plaintiff]'s ability to perform basic

mental work activities and were therefore non[-]severe."  Tr. 18.  The ALJ based this finding on

Plaintiff's mental status examination conducted by Dr. Owen.  Tr. 18 (citing Tr. 449).  As

relevant here, Dr. Owen's examination indicated that Plaintiff suffered from "Adjustment

Disorder with Mixed Anxiety and Depressed Mood."  Tr. 449.  In pertinent part, Dr. Owen

offered the following summary of Plaintiff's mental status:

> [Plaintiff] said she would be working if it were not for the fibromyalgia. . . . She
> has dealt with depression and anxiety for most of her life because her husband at
> one point used drugs and alcohol excessively.  These conditions were situational,
> but she said since developing fibromyalgia the anxiety and depression have
> worsened considerably.

Tr.  449-50.  The ALJ's finding was also based on the opinions of two State agency

psychological consultants, Dr. Renate Wewerka and Dr. William H Farrell, issued in March

2019 and July 2019, respectively.  Tr. 18 (citing Tr. 104-105, 122-24).  These psychological

consultants opined that Plaintiff did not have severe mental impairments.  Tr. 104-105, 122-124.

In fact, Dr. Wewerka's evaluation noted a doctor's visit in May 2018 at which Plaintiff's review

of symptoms indicated "negative" or "stable" for anxiety and depression.  Tr. 104 (citing Tr.

555).  The ALJ found the medical opinions of Dr. Owen, Dr. Wewerka, and Dr. Farrell to be

"persuasive."  Tr. 18.

 The Court agrees with the Commissioner that Plaintiff does not argue that the ALJ's

treatment of the doctors' opinions related to her medically determinable mental impairments was

erroneous.  Doc. 26 at 13-14.  And, as noted above, her attack on the ALJ's step two

determination fails because it is unsupported by law.  *See Allman*, 813 F.3d at 1330.  However,

to the extent Plaintiff's argument in this regard can be read as an attack on the weight the ALJ

assigned to the foregoing medical opinion evidence, the Court cannot conclude that any error

occurred.  *See* Doc. 22 at 13-14.  Plaintiff provides the Court with no legal basis on which she

believes the ALJ erred in assessing this evidence, and the Court's review of the record likewise

reveals that the ALJ's assessment of the medical opinion evidence at issue comports with the

applicable legal standard.  *See* 20 C.F.R. §§ 404.1520c(c)(1)-(4), 416.920c(c)(1)-(4).  For

example, the ALJ's decision makes plain that he was concerned with how consistent the opinions

of the doctors were with the other evidence in the record, and he considered Dr. Owen's treating

relationship with Plaintiff.  Tr. 18-19.  Therefore, the Court rejects Plaintiff's arguments with

respect to her medically determinable mental impairments, and turns to the arguments associated

with ALJ's determination of her RFC and her ability to return to past relevant work.

**D.** **The ALJ's Determination of Plaintiff's RFC and Her Ability to Return to Past
  Relevant Work**

What remains of Plaintiff's arguments centers wholly on the ALJ's determination of her RFC, set forth in its entirety above.[5]  First, Plaintiff maintains that the ALJ did not properly assess her fibromyalgia at step three of the five-step sequential evaluation, leading "to an RFC finding that failed to assess the resulting work-related limitations."  Doc. 22 at 9-12.  More specifically, Plaintiff argues that if the ALJ had properly assessed her fibromyalgia at this step, "his RFC finding would have been more limited regarding sitting, standing and walking, handling and fingering and the ability to understand and remember information as well as the ability to maintain concentration, persistence and pace."  Doc. 22 at 12.  Plaintiff's other contentions related to the RFC determination fall squarely under step four of the five-step sequential evaluation.  Namely, Plaintiff asserts error at this step by arguing that the ALJ disregarded lay evidence.  Doc. 22 at 14-16.  Plaintiff further asserts that the discussion of her past relevant work was inadequate because, in her view, it wants for specificity.  Doc. 22 at 18-19.  As noted and analyzed above,[6] many of Plaintiff's arguments at this stage turn on the weight given to her subjective complaints of pain and related symptoms by the ALJ.  *See* Doc. 22 at 4-12, 18-19.  Therefore, the Court limits its analysis to only those issues identified here and not fully analyzed above, unless an aspect of the former analysis bears repeating, or Plaintiff maintains objective evidence undermines the ALJ's determination of her RFC.  Finally, because the Court assigns no error to the ALJ's decision at step four of the five-step sequential evaluation, it does not address Plaintiff's contention that error is also present in the ALJ's alternative findings made at step five.  *See Wagner v. Lacy*, Nos. 12-CV-817, 12-CV-547, 2013 WL 12328852, at *3 (D.N.M. Nov. 18, 2013) (noting that the Court need not address issues unnecessary for the resolution of a motion).

---

[5] *Supra* Part III.
[6] *Supra* Section III.B.

As to the ALJ's assessment of Plaintiff's fibromyalgia at step three of the five-step sequential evaluation, he found that "[t]hrough the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C[.]F[.]R[.] Part 404, Subpart P, Appendix 1." Tr. 19. Because there is no listing for fibromyalgia, the ALJ consulted SSR 12-2p, 2012 WL 3104869 (July 25, 2012) ("Evaluation of Fibromyalgia"), and considered whether, in Plaintiff's case, this impairment "medically equal[led] a listing," pursuant to SSR 17-2p, 2017 WL 3928306, *2 (Mar. 27, 2017) ("If a[ claimant] has an impairment(s) that does not meet all of the requirements of a listing [in 20 C.F.R. Part 404, Subpart P, Appendix 1], we then determine whether the [claimant]'s impairment(s) medically equals a listed impairment."). The ALJ looked to Listing 1.02 of 20 C.F.R. Part 404, Subpart P, Appendix 1 for musculoskeletal impairments, and noted that "the listing requires gross anatomical deformity and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and finding on appropriate medically acceptable imaging of joint space narrowing, bony destruction or ankylosis of the affected joint." Tr. 19 (citing 20 C.F.R. Part 404, Subpart P, Listing 1.02). He further noted that "[t]he listing also requires involvement of one major peripheral joint in each upper extremity or one major peripheral weight-bearing joint resulting in inability to perform fine and gross movements effectively . . . and/or inability to ambulate effectively." Tr. 19 (citing 20 C.F.R. Part 404, Subpart P, Listing 1.02). He concluded that the medical evidence in the record did not meet these requirements. Tr. 19.

In meager detail, Plaintiff appears to attack the ALJ's discussion on this point by citing caselaw that highlights fibromyalgia's ability to elude objective medical detection. Doc. 22 at 11. The Court acknowledges that "[b]ecause proving the disease is difficult, fibromyalgia

presents a conundrum for insurers and courts evaluating disability claims." *Pacheco v. Berryhill*,

No. 16-CV-62, 2017 WL 3412091, at \*6 (D.N.M. Mar. 28, 2017) (quoting *Welch v. UNUM Life*

*Ins. Co. of Am.*, 382 F.3d 1078, 1087 (10th Cir. 2004)). But the Court perceives no conundrum

here. Indeed, while Plaintiff speaks at length about her subjective complaints of pain and related

symptoms and directs the Court to medical records supportive of this diagnosis, the ALJ did not

quarrel with Plaintiff's fibromyalgia diagnosis; indeed, he found it to be a severe impairment.

Doc. 22 at 4-12, 16-18; Tr. 17. However, "having a pain-producing impairment does not

necessarily mean a person is disabled." *Trujillo v. Comm'r, SSA*, 818 F. App'x 835, 844 (10th

Cir. 2020). And the issue here does not merely turn on the lack of medical evidence in the

record as Plaintiff argues. Doc. 22 at 11. Instead, the issue turns largely on the ALJ's

assessment of Plaintiff's subjective complaints, which she reiterates in her Motion, and the

weight the ALJ ascribed thereto. *Cf. Meraou v. Williams Co. Long Term Disability Plan*, 221 F.

App'x 696, 705 (10th Cir. 2007) (observing that, due to the nature of the disease, the "medical

inquiry" for fibromyalgia impairment "is . . . intertwined with questions of the claimant's

credibility"). Doc. 22 at 4-12, 16-18.

    This case is akin to *Trujillo*, wherein the claimant, who had been diagnosed with

fibromyalgia, argued "that the ALJ erred in basing her credibility determination on objective

medical evidence because, unlike other medical conditions, fibromyalgia cannot be diagnosed by

objective means such as laboratory tests or imaging." 818 F. App'x at 843. As is true here, the

ALJ in *Trujillo* "discussed [the claimant]'s fibromyalgia diagnosis and found it to be a severe

impairment." *Id.* at 844. But the Tenth Circuit stressed that SSR 12-2p, cited by the ALJ in the

instant case, "distinguishes between a fibromyalgia diagnosis and a finding that a [claimant] with

that diagnosis is disabled. . . . And it notes that an ALJ 'must ensure there is sufficient objective

evidence to support a finding that the [claimant]'s impairment(s) so limits the [claimant]'s functional abilities that it precludes . . . her from performing any substantial gainful activity.'" *Trujillo*, 818 F. App'x at 844 (quoting SSR 12-2p, 2012 WL 3104869, at *5) (citing *id.* at *2). In rejecting the claimant's argument, the Tenth Circuit further noted that SSR 12-2p "stresses the importance of considering the claimant's longitudinal record in assessing the evidence, severity, and disabling effects of fibromyalgia." *Trujillo*, 818 F. App'x at 844 (citing SSR 12-2p, 2012 WL 3104869, at *3, *5). This is precisely what the ALJ did here, as illustrated in the Court's analysis above.[7]  Thus, concluding that no error occurred at step three of the five-step sequential evaluation, the Court shifts focus to the errors that Plaintiff asserts occurred at step four.

As to Plaintiff's contention that the ALJ erred by failing to consider lay evidence, the Court is without a basis to assign error. Plaintiff argues that the ALJ did not properly consider a Third Party Function Report submitted by her husband. Doc. 22 at 14-16 (citing Tr. 245-253). Specifically, Plaintiff maintains that the ALJ's decision does not adequately show that he considered this evidence. Doc. 22 at 14. It is true, as Plaintiff notes, that "in the Tenth Circuit an ALJ has not been required to make specific, written findings regarding each third-party opinion, but only when the written decision reflects that the ALJ considered that opinion." *Crystal S. v. Kijakazi*, No. 20-CV-2425, 2021 WL 3089216, at *2 (D. Kan. July 22, 2021). But, where such evidence does nothing more than restate evidence that has already been discredited by the ALJ, the ALJ does not commit harmful error by failing to acknowledge this evidence in his written decision. *See Trujillo v. Colvin*, No. 14-CV-1127, 2015 WL 5010188, at *5 (D. Kan. Aug. 21, 2015) (stating that Third Party Function Reports from the claimant's significant other "were essentially cumulative" of the claimant's subjective complaints that were discounted by

---

[7] *See supra* Section III.B.

the ALJ because of his assessment of her credibility, and concluding that "the ALJ's analysis of [the claimant]'s credibility necessarily applie[d] to" the Third Party Function Reports, rendering any error in not discussing them harmless); *see, e.g.*, *Best-Willie v. Colvin*, 514 F. App'x 728, 736 (10th Cir. 2013); *Miranda R.A. v. Kijakazi*, No. 20-CV-453, 2022 WL 1005303, at *4 (N.D. Okla. Apr. 4, 2022); *Lane v. Berryhill*, No. 17-CV-1181, 2019 WL 355279, at *6-*7 (D.N.M. Jan. 29, 2019). Such is the case here. After thorough review of the document, the Court concludes that its contents are merely cumulative of Plaintiff's subjective complaints of pain and related symptoms. Put simply, Plaintiff does not cite, and the Court cannot locate, anything in the Third Party Function Report that differs or augments Plaintiff's subjective statements, which the ALJ discounted in light of his assessment of Plaintiff's credibility. The Court therefore concludes that any error that may have occurred because of the ALJ's failure to discuss this evidence in his decision, to the extent it is not apparent that it was otherwise considered, is harmless.

　　　　To the extent Plaintiff contends that the objective evidence contradicts the ALJ's RFC determination, the Court disagrees. Doc. 22 at 5. Plaintiff argues that she cannot perform sedentary work,[8] contrary to the ALJ's RFC determination, because "[t]he medical evidence of record" shows that her physical "impairments are more limiting than found in the RFC." Doc. 22 at 7, 9. However, the record evidence Plaintiff cites is not supportive of her position, as it consists primarily of her subjective complaints of pain and related symptoms. Doc. 22 at 6-8 (citing Tr. 238, 243, 249, 274, 318-319, 506-507, 554-556, 639, 740, 749). Inasmuch that Plaintiff cites objective medical evidence, her argument remains unavailing, as it functions as an

---

[8] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." 20 C.F.R. § 404.1567(a).

invitation to reweigh the evidence before the ALJ, contrary to the charge of the applicable

standard of review.  *See Deherrera v. Comm'r, SSA*, 848 F. App'x 806, 808 (10th Cir. 2021)

(setting out the reviewing court's standard of review, and noting that it does not "reweigh the

evidence or retry the case").  For example, some of the evidence cited by Plaintiff is the same

evidence relied on by the ALJ in reaching his decision.  *Compare* Doc. 22 at 6, *with* Tr. 19.

Recently, the Tenth Circuit eschewed the same type of request:

> [Claimant] advances several individual criticisms of the ALJ's analysis of the
> evidence, asserting that the medical evidence could have supported a finding of
> greater disability. . . . But while these arguments may show the ALJ could have
> interpreted the evidence to support a different outcome, they, at most, amount to
> invitations to reweigh the evidence, which [the reviewing court] cannot do.

*Deherrera*, 848 F. App'x at 810.  For these reasons, the Court rejects Plaintiff's argument.

Finally, Plaintiff complains of a lack of specificity in the ALJ's discussion of her ability

to perform past relevant work as an Optometric Assistant.  Doc. 22 at 18-19.  The aspect of

Plaintiff's argument that rests on her position that the ALJ's RFC determination "failed to

consider all limitations" and "cannot form the basis for a step four denial" of DIB is not

considered, as the Court has already concluded that the ALJ's RFC determination does not suffer

from harmful error.  Doc. 22 at 18.  Plaintiff further alleges that "[t]he ALJ did not discuss

specific factual information about the physical demands of the job."  Doc. 22 at 18-19.  Plaintiff

rests her argument on *Winfrey*, 92 F.3d at 1023, discussed in more detail above,[9] which sets out

the three phases the ALJ must visit during step four of the five-step sequential analysis.  Doc. 22

at 18-19.  It appears that Plaintiff takes issue with the ALJ's determination made at the second

phase, "the physical and mental demands of the claimant's past relevant work."  *Winfrey*, 92

F.3d at 1023.  The thrust of Plaintiff's argument is that the ALJ heavily relied on testimony from

---

[9] *Supra*, Part II.

the VE, rather than her "conten[tion] she cannot perform the functions that the job requires," an action she believes fell short of what is required of the ALJ at step four.  Doc 22 at 19.

"An ALJ may rely on information supplied by the VE at step four."  *Doyal v. Barnhart*, 331 F.3d 758, 761 (10th Cir. 2003) (quoting *Winfrey*, 92 F.3d at 1025 (10th Cir. 1996)).  And, "the Court will not reverse the ALJ for relying on the testimony of the VE when determining the demands of [the] claimant's past relevant work."  *Pass v. Kijakazi*, No. 21-CV-248, 2022 WL 2180221, at *9 (D.N.M. June 15, 2022) (alterations, internal quotation marks, and citation omitted).  In his decision, the ALJ noted that Plaintiff testified that work as an Optometric Assistant "was fitting eyeglasses, managing appointments, and assisting an optometrist."  Tr. 23; *see also* Tr. 40-41.  He further noted that the VE "testified that if an individual had . . . [Plaintiff's RFC], such an individual could perform . . . Plaintiff's past relevant work as an Optometric Assistant as generally performed."  Tr. 23; *see also* Tr. 54-61.  Moreover, the ALJ relied on the description of this occupation as contained in the Dictionary of Occupational Titles ("DOT").  Tr. 23.  Specifically, he noted that, per the DOT, an Optometric Assistant performs sedentary work, and the position requires a special vocational preparation ("SVP") level of 6.  Tr. 23 (citing DOT 079.364-014, 1991 WL 646856 (Jan. 1, 2016)).

The ALJ's discussion of Plaintiff's past relevant work is sufficient to meet what is required of him at step four of the five-step sequential analysis.  The Tenth Circuit, and various district courts in this Circuit, have concluded that no error occurred under circumstances like those at hand.  Indeed, the ALJ does not run afoul of *Winfrey* where his decision relies on the testimony of the VE and the job information contained in the DOT.  *See, e.g.*, *Adcock v. Comm'r, SSA*, 748 F. App'x 842, 847 (10th Cir. 2018); *Pass*, 2022 WL 2180221, at *9; *Perez v. Saul*, No. 19-CV-1100, 2021 WL 1177587, at *8 (W.D. Okla. Mar. 26, 2021); *Jeff T. v. Saul*, No. 19-CV-

720, 2021 WL 778613, at *4 (D. Utah Mar. 1, 2021).  Here, as noted above, not only did the ALJ

rely on the VE's testimony and the SVP and exertional levels of an Optometric Assistant from

the DOT in his discussion of her past relevant work, but he also relied on Plaintiff's testimony of

the work she performed when she held this job.  Tr. 23.  Accordingly, the Court is satisfied that

the ALJ properly performed the analysis required of him at step-four of the five-step sequential

evaluation.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion is **DENIED**, and the decision of the

Commissioner is **AFFIRMED**.

**IT IS SO ORDERED.**

**JOHN F. ROBBENHAAR**
United States Magistrate Judge,
Presiding by Consent